UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRAIG THOMAS BATES,
          Plaintiff,

v.                                       Case No. 10-C-0576

HANNS FRIEDELL,
NURSE JANE DOE, and
DOCTOR JOHN DOE,
          Defendants,

## DECISION AND ORDER

Plaintiff, Craig Thomas Bates, brought a pro se civil rights complaint regarding his arrest on April 2, 2010, and his subsequent medical care at the Racine County Jail. Now before me is defendant Hanns Freidel's motion for summary judgment.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS

Plaintiff Craig Thomas Bates is a state prisoner confined at the Racine Correctional Institution. Defendant Hanns Freidel is a police officer in the City of Racine.

On April 2, 2010, at about 12:30 p.m., Officer Freidel and his partner, Officer M. Keland, who were both in full uniform and operating an unmarked police vehicle, were on patrol in the 1400 block of Erie Street in Racine, Wisconsin. The officers were in the area of 1431 Erie Street because they knew there were six active criminal arrest warrants out for plaintiff. Freidel had a picture of the plaintiff in the squad car. Freidel also knew that plaintiff used to live at that address and would occasionally return to the property.

Approximately three weeks prior, Freidel had been told by the woman who lived at 1431 Erie Street that plaintiff would run from the police and fight with them. Plaintiff has submitted an affidavit from his wife averring that she never told officer Freidel or Keland that plaintiff was a fighter.

2

As Freidel and Keland drove past 1431 Erie Street, Freidel noticed the garage door halfway open. Just as Freidel and Keland positioned their squad car to get a clear view of the garage, the garage door opened all the way and plaintiff exited the garage. Plaintiff took a few steps down the driveway and seemed to look directly at the unmarked police car. Plaintiff then turned and began walking toward the yard. Freidel pulled the squad car into a parking lot adjacent to the property. Keland yelled out her open window to plaintiff, "Police, come here." Plaintiff did not hear anyone yell police.

Plaintiff looked back at the officers and then began running through the yard. The officers exited the squad car and yelled, "Stop, police." Plaintiff continued running through the yards. Again, plaintiff denies that he heard the officers yell. As plaintiff ran through yards, Freidel ran down Wisconsin Street.

At some point, plaintiff and Freidel looked at each other and Freidel yelled, "Stop, police." Plaintiff turned around and ran back into a yard. Plaintiff climbed over five fences before Freidel caught up with him. Freidel caught up to plaintiff as plaintiff was attempting to get over another fence. Plaintiff knew Freidel was a police officer but continued to attempt to get away. Freidel then deployed his TASER one time for a five second cycle. Plaintiff was knocked unconscious and fell to the ground on the opposite side of the fence.

Freidel climbed over the fence, and then stabilized and handcuffed plaintiff. According to plaintiff, Freidel jumped onto the back of plaintiff's legs and, being angry, continued to cause injury after becoming aware of plaintiff's prior injury.[1] Defendant Freidel

---

[1] Plaintiff had previously been shot in his right knee with a shot gun, in the summer of 1980.

jumped onto the back of plaintiff's legs, then kneeled into the back of plaintiff's knees, rendering plaintiff temporarily crippled. Plaintiff is still receiving treatment for that injury.

Once plaintiff was handcuffed, Freidel stood up and radioed for other officers. Plaintiff was helped from the ground and the TASER probes were removed. According to Freidel, plaintiff refused medical attention, did not appear to be in distress or in need of medical attention, and then was walked to a squad car and transported to the Racine County Jail and turned over to jail staff. Plaintiff denies the first part and asserts that he was helped to the squad car because of an injury.

Plaintiff complained about pain in his right knee when he was booked into the Racine County Jail. Plaintiff also asserts that he had complained prior to that too. The shift supervisor, Sergeant Gonzalez, asked a nurse practitioner to look at plaintiff's leg to see if he needed to see a doctor. After a visual exam, the nurse practitioner stated, "No, he'll be alright." (Plaintiff's Affidavit, ¶5). Plaintiff was given a wheelchair and placed in a cell by himself. A doctor examined plaintiff four days later and prescribed ibuprofen and crutches. Plaintiff had an x-ray taken of his knee several months later, but he never received the results of the x-ray.

Plaintiff knew there were arrest warrants out for him when he ran from the police. The warrants were for three counts of felony bail jumping, one count of felony battery, one count of disorderly conduct, and one count of misdemeanor bail jumping.

### III. ANALYSIS

Defendant Hanns Freidel argues that he is entitled to summary judgment on plaintiff's claims against him. He denies that the force he used during Bates' arrest was

4

excessive and that he was indifferent to a serious medical need. Freidel also argues that he is entitled to qualified immunity.

An arrestee's claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In determining whether an officer's use of force is reasonable, courts must balance the nature and quality of the intrusion upon the individual's Fourth Amendment rights against the countervailing government interests at stake. Johnson v. LaRabida Children's Hosp., 372 F.3d 894, 898 (7th Cir. 2004). Reasonableness is judged from the perspective of whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer at the time. Id. When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating: (1) the severity of the suspected crime; (2) whether the suspect posed an immediate threat to the officer on the scene or others; and (3) whether the suspect was actively resisting or attempting to evade arrest. Id.

With regard to the severity of the crime, plaintiff asserts that Freidel was pursuing plaintiff for domestic violence allegations resulting in additional bail jumping charges for forgery. He suggests that he was not an immediate threat because he was a fifty-two year old non-violent offender. Plaintiff contends that although he initially fled from Freidel on foot, he was not a threat to Freidel because plaintiff was face down on the ground at the time the injury took place. Plaintiff also suggests that Freidel attempted to justify his use of force by falsely alleging that plaintiff was "a fighter." Plaintiff points to Freidel's attempts

5

to justify his actions as evidence that Freidel knew he was acting illegally, which plaintiff argues undermines Freidel's assertion of qualified immunity. Plaintiff further asserts that Freidel continued to be aggressive with him, even after he knew that plaintiff had a previous injury to his right knee.

Even viewed in the light most favorable to plaintiff, Freidel's actions were reasonable in light of circumstances he faced and the information he knew. Freidel was in pursuit of someone with numerous outstanding warrants, including several for bail jumping, which could indicate a likelihood to run, and plaintiff led Freidel on a chase, running through yards and climbing over five fences before Freidel could catch up with him. Freidel used one blast of his TASER to immobilize plaintiff, jumped onto plaintiff to hold him down, and kneeled on the back of plaintiff's legs while he was handcuffing him to make sure plaintiff did not attempt to run again. A reasonable jury could not conclude that this was an excessive use of force. Plaintiff's Fourth Amendment rights were not violated during his arrest on April 2, 2010.

With regard to the medical care claim, plaintiff's arguments focus on Nurse Jane Doe and Doctor John Doe, rather than Freidel. It is possible that plaintiff has abandoned his medical care claim against Freidel. See, e.g., Laborers' Int'l Union of N. Am. v. Caruso, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); Pugh v. City of Attica, Indiana, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same).

In any event, the evidence viewed in the light most favorable to the plaintiff does not indicate that Freidel was deliberately indifferent to plaintiff's serious medical need. Although plaintiff requested medical treatment for pain in his knee, nothing in the record

6

indicates this injury warranted an emergency room visit.[2] Even if a jury found that plaintiff's leg injury constituted a serious need, no reasonable jury could conclude that taking plaintiff to the jail, where Freidel knew there was medical treatment available, rather than to a hospital, constituted deliberate indifference.

## IV. UNIDENTIFIED PARTIES

At screening, I also allowed plaintiff to proceed on claims against parties identified as Nurse Jane Doe and Doctor John Doe. Consistent with the screening order, plaintiff provided me with an update regarding his attempts to discovery the names of Nurse Jane Doe and Doctor John Doe. In his letter received June 16, 2011, plaintiff asked the court for assistance in obtaining the identities of those defendants.

"When the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not specifically named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint. To the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation." Donald v. Cook County Sheriff's Dep't, 95 F.3d 548, 555 (7th Cir. 1996). Accordingly, at this time, I will assist plaintiff in his attempts to identify the unidentified defendants so that he may proceed on his claims against them.

If counsel for defendant Freidel has obtained plaintiff's medical records from the jail, they shall provide a copy to the court (under seal) within ten days of this order. Additionally, counsel shall provide the court with the names of the nurse and/or doctor in

---

[2] Plaintiff was not seen by a doctor for four days and then received only ibuprofen and crutches to use.

7

question if they know them. If counsel does not have any documents or information, counsel shall file a letter to that effect within ten days of this order. I will evaluate the information counsel provides to determine whether the unnamed defendants can be identified or whether additional discovery is necessary.

**THEREFORE, IT IS ORDERED** that defendant Hanns Freidel's motion for summary judgment (Docket #55) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing plaintiff's claims against defendant Hanns Freidel.

**IT IS FURTHER ORDERED** that within ten days of this order counsel for defendant Hanns Freidel shall provide the court with any documents or information they have regarding the identity of Nurse Jane Doe or Doctor John Doe including but not limited to plaintiff's medical records from the Racine County Jail. Any documents should be filed under seal. If counsel has no such documents or information, they shall file a letter with the court to that effect.

Dated at Milwaukee, Wisconsin, this 27th day of January, 2012.

s/_____
LYNN ADELMAN
District Judge